UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

MALEKE SOCKWELL

No. 3:21-CR-00071 (MPS)

**RULING ON MOTION TO SUPPRESS**

## I.  INTRODUCTION

On May 4, 2021, a grand jury returned a three-count Indictment charging Defendant Maleke Sockwell with (1) possession with intent to distribute cocaine base and fentanyl, (2) possession of a firearm in furtherance of a drug trafficking crime, and (3) unlawful possession of a firearm by a felon.  ECF No. 1.  Sockwell moves to suppress all evidence seized by the Waterbury Police Department, the law enforcement agency that arrested him.  ECF No. 25 at 1.  For the reasons below, I DENY the defendant's motion to suppress.

## II.  FACTS

I assume familiarity with the parties' briefs and set forth only so much background as necessary to explain the ruling.  The facts set forth below are undisputed.  ECF No. 28 at 2 n.1.

On March 12, 2021, members of the Waterbury Police Department's Street Crime Unit ("SCU") conducted surveillance in the parking lot of a Stop and Shop in Waterbury.  ECF No. 28-1 at 2.  The SCU had received anonymous complaints about drug dealing in that parking lot.  *Id.*  Officer Shea observed a Toyota Tacoma parked in the lot and then observed "a vehicle park next to the Tacoma at which time a male party exited … his vehicle and entered the passenger seat of the Tacoma."  *Id.* at 3.  Afterwards, the male party exited the Tacoma, returned to his

1

vehicle, and drove out of the parking lot. *Id.* Later, Officer Shea observed another vehicle and male party do the same. *Id.* Based on Officer Shea's training and experience, he believed that "this behavior [was] consistent with hand to hand drug transactions." *Id.* Officer Shea also knew that "drug dealers … meet in various places such as parking lots in an attempt to blend in with other people or vehicles in the area to prevent detection by police." *Id.*

When the Tacoma left the parking lot, Officer Rivera followed and observed that the driver of the Tacoma failed to give a proper turn signal. *Id.* at 3–4. The driver of the Tacoma, later identified as Sockwell, parked the vehicle on the sidewalk outside of 385 Wolcott Street. *Id.* at 4. Sockwell exited the driver side of the Tacoma and shut the door. *Id.* Police officers parked one vehicle next to the Tacoma and a police cruiser behind the Tacoma and activated emergency lights and sirens. *Id.* Sockwell, after observing the police cruiser, threw items onto the front yard of 385 Wolcott Street and ran. *Id.* Officer Cabrera apprehended and arrested Sockwell. *Id.* at 4–5. Police officers recovered three cellphones from the front yard. *Id.* Based on Officer Cabrera's experience and training, he believed that drug dealers "use cell phones to facilitate and conduct narcotics transactions." *Id.* Officer Cabrera then "looked into the driver side window of the Tacoma" and observed a firearm on the floor in front of the driver seat. *Id.* Officer Cabrera conducted a search of the Tacoma for any other weapons or contraband and found white glassine bags with a "tan powder like substance," a clear bag with "white rock like substance," a digital scale, and a "large amount of U.S. currency … later found to be $8,759." *Id.* At police headquarters, the powder-like substance tested positive for fentanyl and the rock-like substance tested positive for cocaine. *Id.* at 7.

### III.  DISCUSSION

    A. The *Terry* Stop

Sockwell moves to suppress the evidence described above, arguing that the police officers lacked reasonable suspicion when they initiated a *Terry* stop of Sockwell based on the anonymous tips and the individuals entering and exiting the passenger seat of the Tacoma in the Stop and Shop parking lot. ECF No. 25-1 at 4–6. Sockwell argues that he was seized as soon as the police officers parked alongside the Tacoma with activated lights and sirens—and before he jettisoned the cell phones and fled. *Id.* at 4. The Government counters that Sockwell was seized later, when he was apprehended, and that the analysis of the stop and subsequent search of the car must take account of the information the officers learned after they parked their vehicles, including Sockwell's flight and discarding of three cell phones, all of which satisfied the reasonable suspicion standard necessary to justify a stop. ECF No. 28 at 5–6.

### i. Initiation of the **Terry** *Stop*

The first issue is *when* the police officers initiated the *Terry* stop of Sockwell. "A *Terry* stop begins when an individual is seized for purposes of the Fourth Amendment," *United States v. Lopez*, 432 F. Supp. 3d 99, 110 (D. Conn. 2020), and must be "justified at its inception," *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). "A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained." *Id.*

Fleeing suspects are not seized until they are physically restrained or otherwise submit to a police officer's show of authority. In *California v. Hodari D.*, the Supreme Court held that where a suspect fled at the sight of the police and was pursued and tackled, the police's pursuit "constituted a 'show of authority' enjoining [the defendant] to halt," and because the defendant did not comply, "he was not seized until he was tackled." 499 U.S. 621, 629 (1991). The Second Circuit reached a similar conclusion in *United States v. Swindle*, 407 F.3d 562, 564 (2d

Cir. 2005), where the police officers had followed the defendant's car, activated their police strobe light, and ordered the defendant to pull over, but the defendant continued driving, violated multiple traffic laws, jettisoned a bag of crack cocaine, and the officers apprehended him only after he pulled over and fled on foot. *Id.* Rejecting the defendant's argument that the officers had seized him when they "activated their police light because no reasonable driver would have felt free to ignore that order to stop," the court held that the defendant "was not seized until the police physically apprehended him." *Id*. at 571–72. Even though the defendant may "have felt restrained in the face of the flashing police strobe light, there was no immediate physical force applied or submission to the assertion of authority." *Id.* at 572–73 (internal quotation marks omitted).

Thus, under *Hodari* and *Swindle*, Sockwell was seized when he was physically apprehended. The police officers' actions—parking by the Tacoma and activating lights and sirens—constituted a "show of authority" but did not amount to a seizure because Sockwell failed to submit to their authority and fled until he was physically restrained. *See id.* at 566 (noting that "any reasonable driver would understand a flashing police light to be an order to pull over" but "such an order would not give rise to a 'stop' unless the driver submitted to the order or was physically apprehended"). Because Sockwell did not submit to the officers' show of authority, he was not seized until he was physically restrained.

Sockwell likens this case to *United States v. Lopez*, 432 F. Supp. 3d 99, 110 (D. Conn. 2020), where the court held that a vehicle stop started once the police officer exited his car and approached the defendant's car while shouting instructions. In finding that the stop began at that moment, the court relied, in part, on the fact that the police officer effectively boxed in the defendant by parking his car in such a way that the defendant would have had to hit him to drive

4

away. *Id.* at 110–11. Unlike in this case, the defendant did not attempt to flee and never left the car. *Id.* at 105. Because he remained in his car and his car was boxed in, he was, to a much greater extent than Sockwell, restricted in his ability to move, even though he did not "stop moving and show his hands" in accordance with the officer's instructions until the officer used a "pain compliance technique." *Id.* at 108; c*ompare Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 252 (N.D.N.Y. 2014) (finding that the plaintiff did not submit to the police officers' show of authority when he fled in response to the officers shining a spotlight on him and telling him to stop). By contrast, Sockwell had already exited his vehicle and had—and used—a route of escape on foot.

Because I find that Sockwell was seized when he was apprehended, any items that he "abandoned before being apprehended were … not the product of a Fourth Amendment seizure." *Swindle*, 407 F.3d at 573. Thus, I deny the motion to suppress as to the cell phones recovered from the front yard after Sockwell discarded them.

   *ii.*  **Reasonable Suspicion**

The second issue is whether the *Terry* stop was supported by reasonable suspicion. Reasonable suspicion is more than a "hunch" and requires "specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (internal quotation marks and citations omitted). However, "[t]he standard is not high" and "less than probable cause." *Id.* When assessing reasonable suspicion, a "court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." *Id.* (internal quotation marks and citation omitted).

The discussion above about the timing of the seizure supports the Government's argument that the analysis of the stop must take account of all the information the police learned before they apprehended Sockwell, including: (1) multiple anonymous tips of drug dealing in the parking lot; (2) the two instances of persons entering and exiting the passenger seat of the Tacoma; and (3) Sockwell's flight and tossing items onto a front yard.  ECF No. 28 at 9.  I find that these three facts taken together are sufficient to establish reasonable suspicion.

Sockwell argues that anonymous tips cannot be considered in the reasonable suspicion analysis because the tips do not have "sufficient indicia of reliability."  ECF No. 25-1 at 6.  While anonymous tips alone are not sufficient for reasonable suspicion, the police officers corroborated these tips with surveillance suggesting that drug transactions were taking place at the Stop and Shop parking lot.  *See United States v. Muhammad*, 463 F.3d 115, 122 (2d Cir. 2006) ("[P]ersonal observations made by the officers that corroborate information furnished by an unknown and unaccountable tipster may provide the basis for a reasonableness finding.").  Sockwell also argued that the police officers did not see any drugs or money change hands as part of the two alleged transactions and never verified that the drug transactions took place.  ECF No. 25-1 at 11.  "In the case of a suspected drug transaction, [the Second Circuit] has held that the reasonable suspicion inquiry must ask if 'the conduct would appear suspect to one familiar with the practices of narcotics, albeit the pattern of behavior is innocuous to the untrained observer.'" *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (quoting *United States v. Glover*, 957 F.2d 1004, 1010 (2d Cir. 1992)).  "But a district court must not merely defer to the police officer's judgment."  *Id.*  "A police officer's observation of what he reasonably believes to be a drug transaction in progress clearly supports a reasonable suspicion sufficient to stop the suspect for further investigation."  *Crenshaw v. City of Mount Vernon*, 372 Fed. App'x 202, 207

(2d Cir. 2010) (summary order).  Here, Officer Shea, based on his training and experience, determined that his observations were consistent with hand-to-hand drug transactions.

In any event, I need not decide whether Officer Shea's suspicion was reasonable based on the tips and his observations of the Tacoma alone.  As noted above, I may also consider Sockwell's flight and his jettisoning of items once the police announced their presence with lights and sirens.  Those actions together with the tips and parking lot activity were plainly adequate to support reasonable suspicion.  *See United States v. Pagan*, No. 12-cr-267, 2013 WL 3967641, at *3 (D. Conn. July 31, 2013) ("[T]he [S]econd [C]ircuit has held that efforts to flee or evade law enforcement officers provide additional grounds to support reasonable suspicion." (citing *Swindle*, 407 F.3d at 568)); *United States v. Muhammad*, 463 F.3d 115, 121 (2d Cir. 2006) ("When the noticed presence of officers provokes a suspect's headlong flight in a high crime area, the officers are justified in suspecting criminal activity on the part of the suspect and a *Terry* stop is warranted"); *United States v. Jackson*, 548 F. Supp. 2d 24, 27 (W.D.N.Y. 2008) ("Unprovoked flight upon noticing police is pertinent in determining reasonable suspicion").  Indeed, the court in *Lopez*, on which the defendant relies, similarly relied on the defendant's reaction to the presence of police—which though not involving flight, included "a surprised face" and the defendant's reaching toward his waistband and placing an item in the rear passenger side of the vehicle—in concluding that the stop was supported by reasonable suspicion.  *Lopez*, 432 F. Supp. 3d at 113–15.

I find that there was reasonable suspicion to stop Sockwell based on the anonymous tips, the parking lot surveillance, and Sockwell's flight and jettisoning of items upon seeing the police cruiser.

    **B.  Search of the Tacoma**

Sockwell argues that the police officers unlawfully searched the Tacoma because they lacked probable cause and neither the automobile exception nor the plain view exception to the warrant requirement applies. ECF No. 32 at 6. The Government counters that the automobile exception applies and that there was probable cause to search the Tacoma based on the events leading up to the seizure of Sockwell and the presence of the firearm in plain view. ECF No. 28 at 11.

Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception is the automobile exception, which permits law enforcement to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007) (quoting *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004)). "[P]robable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched." *Gaskin*, 364 F.3d at 456 (2d Cir. 2004) (internal quotation marks, modifications, and citations omitted). "If an officer has probable cause to believe that a vehicle contains contraband, the permissible scope of the search extends anywhere within the vehicle that the contraband may be located, including containers or packages." *Navas*, 597 F.3d at 497; *see United States v. Fuller*, No. 07-cr-276, 2007 WL 3006081, at *2 (E.D.N.Y. Oct. 10, 2007) (noting that a "gun in plain view gave the officers probable cause to believe the car

contained contraband, thus allowing them to search the car pursuant to the automobile exception").

     I find that there was probable cause to search the Tacoma.  Taken together, the anonymous tips, the suspected hand-to-hand drug transactions in the parking lot, Sockwell's flight upon noticing the police cruiser, Sockwell's discarding of three phones while fleeing, and the firearm in plain view in the Tacoma were easily "sufficient … to warrant a man of reasonable caution that evidence of a crime" would be found inside the vehicle.  That leaves only Sockwell's argument that a warrant was required.  Sockwell argues that the automobile exception applies only to "a readily mobile vehicle" and is thus inapplicable in this case because the Tacoma was parked, the driver was detained, and the police officer seized the keys.  ECF No. 32 at 6–7.  Whether a vehicle is "readily mobile" depends on "*the inherent mobility of the vehicle*," not on the likelihood that the vehicle will be moved at the moment of the search. *Navas*, 597 F.3d at 498 (emphasis in original).  The automobile exception applies to parked vehicles and scenarios in which the police officer has taken the defendant's keys because neither action renders the vehicle "immobile or immovable."  *See United States v. Aristizabal*, No. 93-cr-424, 1993 WL 262714, at *6 (E.D.N.Y. June 25, 1993) (applying the automobile exception when the agents seized the defendant's keys to a parked and locked vehicle); *California v. Carney*, 471 U.S. 386, 392 (1985) (applying the automobile exception to a parked mobile home).  The fact that the driver was detained does not change the analysis because "the automobile exception does not have a separate exigency requirement."  *United States v. Jones*, 893 F.3d 66, 73 (2d Cir. 2018) (finding that the automobile exception does not have an exigency requirement and applied even when the "suspects were in custody and investigators had secured the area").  I find that the automobile exception applies to the Tacoma.

Because there was probable cause and the automobile exception to the warrant requirement applies, it does not matter whether the plain view exception also applies. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment … permits police to search the vehicle without more."). Sockwell is thus incorrect in asserting that Officer Cabrera "had no legal right to open the door" of the vehicle after noticing the handgun in the car, ECF No. 32 at 7–8; he had such a right because he had probable cause—supported in part by his observation of the handgun while standing outside of the vehicle—and because the automobile exception applied.

Because the automobile exception applies and the police officers had probable cause to search the Tacoma, I deny Sockwell's motion to suppress the evidence from the search of the car.[1]

For the reasons above, the motion to suppress (ECF No. 25) is DENIED.

IT IS SO ORDERED.

　　　　　　　　／s／　　　　　　　　　　　　
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         November 8, 2021

---

[1] Since I found that the search of the Tacoma was proper, I decline to address the Government's alternative argument that the search would have been valid under the inevitable discovery doctrine. ECF No. 28 at 12.